

# SEALED

ORIGINAL

1 | LAW OFFICE OF DANIEL MARKS
DANIEL MARKS, ESQ.
2 | Nevada State Bar No. 002003
ADAM LEVINE, ESQ.
3 | Nevada State Bar No. 004673
CHRISTOPHER L. MARCHAND, ESQ.
4 | Nevada State Bar No. 011197
530 S. Las Vegas Blvd. Suite 300
5 | Las Vegas, Nevada 89101
(702) 386-0536; Fax: (702) 386-6812
6 | Attorneys for Plaintiffs

7 | **UNITED STATES DISTRICT COURT**

8 | **DISTRICT OF NEVADA**

9 | THE UNITED STATES OF AMERICA;         Case No.:
*ex rel.* Thomas Howard; Robert Weldy,          **2:10-cv-1890-GMN-PAL**
10 |
Plaintiffs/Relators,          **FILED IN CAMERA**
11 |                                            **AND UNDER SEAL**
vs.
12 |
SHOSHONE PAIUTE TRIBES, DUCK
13 | VALLEY INDIAN RESERVATION,              **DEMAND FOR JURY TRIAL**

14 |          Defendant.

15 | _____/

16 |                      **COMPLAINT**

17 |          COMES NOW the qui tam Plaintiffs and Relators Thomas Howard and Robert Weldy; by and

18 | through their counsel, Daniel Marks, Esq., and Christopher L. Marchand, Esq., of the Law Office of Daniel

19 | Marks, and for their causes of actions against the Defendant herein alleges as follows:

20 | I.   **INTRODUCTION**

21 |          1.   This is an action to recover damages and civil penalties on behalf of the United States of

22 |          American arising out of false claims approved and presented by Defendant to obtain

23 |          compensation from the United States Department of Health and Human Services ("HHS").

24 |          The core allegations are that Defendant has knowingly misrepresented to the United States

25 |          government that its medical facility was a hospital when in actuality it is only accredited as

26 |          a clinic, has billed medicare and medicaid multiple times for the same services, has filed

27 |          claims for reimbursement for treatment of individuals Defendant did not verify were

28 |          descendants of a member of a tribe, billed medicare and medicaid for physician visits when

physicians would not see patients but only nurses would, billed medicare and medicaid for physician visits for unlicensed physicians, and were billing medicare and medicaid using an outdated billing package resulting in incorrect medicare and medicaid billing.

2.      Defendant's conduct herein violates the federal False Claims Act, 31 U.S.C. 3729 et. seq. and the Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21.  The FCA was originally enacted during the Civil War and was substantially amended in 1986. Congress amended the FCA to enhance the federal government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the statute, which Congress characterized as the primary tool for combating government fraud, was in need of modernization.  Congress intended that the amendments create incentives for individuals with knowledge of fraud against the United States to disclose the information without fear of reprisals or government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the government's behalf.  In 2009 Congress enacted the Fraud Enforcement and Recovery Act of 2009, in an effort to further the goal of recovering losses sustained as a result of fraud against the United States.

3.      The FCA prohibits knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1). Additionally, it prohibits knowingly making or using (or causing to be made or used) a false or fraudulent record or statement (a) to get a false or fraudulent claim paid or approved by the federal government or (b) to conceal, avoid, or decrease an obligation to pay or transmit money or property to the federal government. 31 U.S.C. § 3729(a)(1)(B), (G).  Any person who violates the FCA is liable for a civil penalty of up to $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each violation, plus three times the amount of the damages sustained by the United States. 31 U.S.C. § 3729(a)(1).

4.      The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery.  The FCA requires that the Complaint be filed under seal for a minimum of 60 days (without service on the defendant

2

during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

5.     Based on these provisions, *qui tam* relators Thomas Howard and Robert Weldy seek to recover all available damages, civil penalties, and other relief for State and Federal violations alleged herein.

## II.    JURISDICTION AND VENUE

6.     This is an action brought pursuant to the False Claims Act, 31 U.S.C. § 3729, and subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331. There has been no public disclosure of the allegations or transactions set forth in the complaint and Relators are the original source of the allegations in the complaint. The acts complained of were committed in the state of Nevada.

7.     This court has personal jurisdiction over Defendant under 31 U.S.C. § 3732(a).

## III.    THE PARTIES

8.     Defendant is an Indian Reservation located on the Nevada-Idaho state line. Defendant Indian Reservation was originally established in 1877 and was subsequently enlarged by executive order.

9.     The Relators, Thomas Howard and Robert Weldy, maintain domiciles in Winnsboro, Texas, and Owyhee, Nevada, respectively. Both Relators were previously employed by Defendant, however were forced to resign or were terminated after they discovered Defendant was filing false claims with the United States government.

10.    During employment Relators discovered that Defendant was submitting false claims to the United States government. Relators are the original source of the allegations contained in this complaint.

## IV.    LEGAL BACKGROUND

11.    The United States, through the Department of Health and Human Services, Indian Health Services, provides a health delivery system to approximately 1.9 million American Indians and Alaskan Natives.

12.    The Indian Health System is comprised of three components, the federal Indian health

service, tribally operated programs, and urban Indian clinics.

13. The Indian Health System is considered prepaid by the United States government with the land ceded by tribes in past treaties and executive orders. The Unites States provides medical services to American Indians and Alaskan Natives at no charge.

14. In order to be eligible for Indian health care services, the patient must be a descendant of a member of a recognized tribe.

15. The Indian reservations receive medical funding from three primary sources: the annual funding agreement, contract health, and third party billing to medicare, medicaid, and third party insurance.

16. An Indian reservation that knowingly submits false claims for payment to medicare and medicaid submits false or fraudulent claims.

## V. ALLEGATIONS

17. Defendant, the Paiute Shoshone Duck Valley Indian Reservation, receives medical funding from three sources, the annual funding agreement, contract health, and third party billing to medicare, medicaid, and third party insurance.

18. Defendant has knowingly misrepresented to the United States government that its medical facility was a hospital when in actuality it is only accredited as a clinic, has billed medicare and medicaid multiple times for the same services, has filed claims for reimbursement for treatment of individuals Defendant did not verify were descendants of a member of a tribe, billed medicare and medicaid for physician visits when physicians would not see patients but only nurses would, billed medicare and medicaid for physician visits for unlicensed physicians, and were billing medicare and medicaid using an outdated billing package resulting in incorrect medicare and medicaid billing.

19. Defendant has engaged in this pattern and practice of making false or fraudulent claims to obtain funds from all three of its medical income streams, from the annual funding agreement, contract health, and third party billing to medicare and medicaid. In this manner, Defendant has knowingly received millions of dollars in federal monies to which it was never entitled.

4

20.   In 2007 Defendant improperly transported a patient which resulted in the loss of Defendant's accreditation as a hospital. Despite the fact that Defendant's facility was no longer an accredited hospital, and was now only considered a clinic, Defendant continued to bill medicare and medicaid as though Defendant's facility was a hospital, not a clinic. Further, Defendant continued to report to the United States government that it had a hospital and not a clinic which resulted in additional funding Defendant would not have otherwise been entitled to from the United States government. This practice continued through approximately the end of 2009 to the beginning of 2010. This resulted in receipt of in excess of thirteen million dollars per year in fraudulent claims.

21.   Defendant is also billing medicare and medicaid multiple times for the same services. Defendant has already received reimbursement from medicare and medicaid for these services, however, Defendant has resubmitted these claims additional times in order to receive additional, fraudulent, reimbursement. Defendant engaged in this fraudulent practice from the end of 2009 through the present.

22.   In order to be eligible for Indian health care services, the patient must be a descendant of a member of a recognized tribe. The reason behind this requirement is that the Indian Health System is considered prepaid by the United States government with the land ceded by tribes in past treaties and executive orders. If an individual is not a descendant of a member of a recognized tribe then they are not entitled to the benefits of tribal membership, including receiving health services at no charge. Defendant has systematically provided services to both non-tribe members as well as individuals Defendant did not verify were tribe members. Defendant is then submitting these services to the United States for reimbursement. Defendant engaged in the practice at least back to 2007, though likely for a period significantly longer than this, through 2009. It is believed that Defendants have resumed this practice.

23.   Defendant has also billed medicare and medicaid for physician visits when physicians would not see patients but only nurses or unlicensed physicians would. Defendant's prior pharmacist, Monty Stranley, informed Defendant that this practice violated several laws and

5

1   was an improper or false claim to medicare and medicaid, however, Defendant continued this

2   fraudulent practice.  Defendant submitted these fraudulent claims between 2007 and March

3   of 2009.

4   24.   Between 1997 and October or November of 2009 Defendant used an outdated billing

5   package which resulted in false and fraudulent claims to the United States government.

6   Defendant was well aware that it was using this outdated billing package and that it resulted

7   in false claims, however, refused to update the billing package.

8   25.   Through its fraudulent scheme, Defendant obtained millions of dollars which it was not

9   entitled too and was unjustly enriched at the expense of the federal government by not

10   refunding the federal government for these false claims.

11   26.   The following individuals uncovered false claims made by Defendant: Robert Weldy,

12   Thomas Howard, Darren Crow, Lindsey Manning, Monty Stranley, and James Walker - all

13   of these individuals were either forced to resign or were terminated by Defendant.

14   **FIRST CAUSE OF ACTION**

15   **False Claims Act 31 U.S.C. § 3729(a)(1)**

16   27.   Plaintiff restates the allegations of Paragraphs of 1 through 26 and incorporates them herein

17   by reference.

18   28.   By committing to above-described acts and by engaging in other activity in support of the

19   above-described scheme to defraud the United States, Defendant has violated 31 U.S.C. §

20   3729(a)(1), which forbids the knowing presentment "to an officer or employee of the United

21   States Government . . . a false or fraudulent claim for payment or approval."

22   29.   Relators do not know the exact amount of Defendant's unjust enrichment from this scheme

23   but allege upon information and belief that the figure far exceeds one million dollars.  The

24   exact figure can be ascertained at a later state of these proceedings.

25   30.   As a direct and proximate result of Defendant's actions as set forth above, the United States

26   has suffered and/or incurred damages in excess of one million dollars.

27   ////

28   ////

6

## SECOND CAUSE OF ACTION

### False Claims Act 31 U.S.C. § 3729(a)(2)

31.  Plaintiff restates the allegations of Paragraphs of 1 through 30 and incorporates them herein by reference.

32.  By committing to above-described acts and by engaging in other activity in support of the above-described scheme to defraud the United States, Defendant has violated 31 U.S.C. § 3729(a)(2), which forbids the knowing fabrication or use of "a false record or statement to get a false or fraudulent claim paid or approved by the Government."

33.  Relators do not know the exact amount of Defendant's unjust enrichment from this scheme but allege upon information and belief that the figure far exceeds one million dollars.  The exact figure can be ascertained at a later state of these proceedings.

34.  As a direct and proximate result of Defendant's actions as set forth above, the United States has suffered and/or incurred damages in excess of one million dollars.

## THIRD CAUSE OF ACTION

### False Claims Act 31 U.S.C. § 3729(a)(7)

35.  Plaintiff restates the allegations of Paragraphs of 1 through 34 and incorporates them herein by reference.

36.  By committing to above-described acts and by engaging in other activity in support of the above-described scheme to defraud the United States, Defendant has violated 31 U.S.C. § 3729(a)(7), which forbids the knowing fabrication or use of "a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property of the Government."

37.  Relators do not know the exact amount of Defendant's unjust enrichment from this scheme but allege upon information and belief that the figure far exceeds one million dollars.  The exact figure can be ascertained at a later state of these proceedings.

38.  As a direct and proximate result of Defendant's actions as set forth above, the United States has suffered and/or incurred damages in excess of one million dollars.

////

1

## **PRAYER FOR RELIEF**

2 WHEREFORE, the Relator now prays to the Court for an award of the below listed

3 redress and other relief:

4     1.    For damages in excess of $1,000,000;

5     2.    For attorney's fees and litigation costs incurred;

6     3.    For such other and further relief as the Court deems just and proper.

7

## **DEMAND FOR TRIAL BY JURY**

8 Plaintiff now demands a jury trial.

9

10     DATED this _28th_ day of October, 2010.

11             LAW OFFICE OF DANIEL MARKS

12

13             DANIEL MARKS, ESQ.
            Nevada State Bar No. 002003

14             ADAM LEVINE, ESQ.
            Nevada State Bar No. 004673

15             CHRISTOPHER L. MARCHAND, ESQ.
            Nevada State Bar No. 011197

16             530 South Las Vegas Blvd. Suite 300
            Las Vegas, Nevada  89101

17             Attorneys for Plaintiffs/Relators

18

19

20

21

22

23

24

25

26

27

28

8