**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. THOMAS HOWARD, et al., | ) ) ) |
| | ) Case No. 2:10-cv-01890-GMN-PAL |
| Plaintiffs/Relators, | ) **ORDER** |
| vs. | ) ) |
| SHOSHONE PAIUTE TRIBES, et al., | ) ) |
| Defendants. | ) ) ) |

The court held a hearing on the parties' Stipulated Discovery Plan and Scheduling Order (Dkt. #28) on June 12, 2012, because the parties dispute whether discovery should begin while Defendant Shoshone Paiute Tribes, Duck Valley Indian Reservation's ("Defendant" or "the Tribes") Motion to Dismiss is pending. Daniel Marks and Christopher Marchand appeared on behalf of Plaintiffs/Relators Thomas Howard and Robert Weldy ("Plaintiffs/Relators").  Richard Monkman appeared for Defendant.

The parties' disagree about whether initial disclosures under Rule 26 of the Federal Rules of Civil Procedure must be exchanged and discovery commenced.  Plaintiffs/Relators assert that Defendant's Motion to Dismiss (Dkt. #15) constitutes an appearance, and the parties should exchange initial disclosures and start discovery.  Defendant contends the Motion to Dismiss is a jurisdictional motion based on sovereign immunity, and disclosure obligations under Rule 26 and discovery should be held in abeyance until the Motion is decided.  Although a motion to stay discovery has not been filed, the court set the matter for hearing to save the parties expensive motion practice.

This qui tam action was filed under seal by Plaintiffs/Relators on October 28, 2010.  The Complaint (Dkt. #1) seeks o recover damages and civil penalties against Defendant, alleging violations of the False Claims Act, 31 U.S.C. § 3729 et seq., and the Fraud Enforcement and Recovery Act of

2009, Pub.L. No. 111-21 (together, the "FCA" or the "Act").[1]  Plaintiffs/Relators allege that Defendant, among other things, knowingly filed false claims for payment or approval with the United States Department of Health and Human Services.  *Id.*  On July 11, 2011, Plaintiff United States filed a Notice of its Election to Decline Intervention (Dkt. #4), and on December 13, 2011, the court granted Plaintiffs/Relators' Motion to Proceed with the Complaint (Dkt. #6) and Motion to Serve Defendant With Complaint and Summons (Dkt. #7).  *See* Order (Dkt. #8).  On April 9, 2012, Defendant filed the Motion to Dismiss, and on April 30, 2012, Plaintiffs/Relators filed a Response (Dkt. #23).

**I.      Staying Discovery Pending Decision on Dispositive Motion.**

The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially-dispositive motion is pending.  *Skellercup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal 1995) (stating that if the Federal Rules contemplated a motion to dismiss under Rule 12(b)(6) would stay discovery, they would contain such a provision, and finding that a stay of discovery is directly at odds with the need for expeditious resolution of litigation).

Two published decisions in this district have held that ordinarily, a dispositive motion does not warrant a stay of discovery.  *Twin City Fire Insurance v. Employers of Wasau*, 124 F.R.D 652, 653 (D. Nev. 1989); *Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997). Both of these decisions held that to establish good cause for a stay, the moving party must show more than an apparently meritorious Rule 12(b)(6) motion.  *Id.*  Citing the Ninth Circuit's decision in *Wood v. McEwen,* 644 F.2d 797, 801 (9th Cir. 1981) (per curiam), *Twin City* and *Turner* both held that a district court may stay discovery only if it is *convinced* that the plaintiff cannot state a claim for relief. 124 F.R.D. at 653; 175 F.R.D. at 556.  Dispositive motions that raise issues of jurisdiction, venue, or immunity are common situations where a court might stay discovery pending resolution of a dispositive motion.  *Id.*

On the other hand, the Ninth Circuit has held that under certain circumstances, a district court abuses its discretion if it prevents a party from conducting discovery relevant to a potentially dispositive

---

[1]The False Claims Act permits private parties (i.e., the Plaintiffs/Relators here) to bring a civil action for violations of the Act and to recover damages on behalf of the United States and then share in any recovery with the government.  *See* 31 U.S.C. § 3730.

motion. *See Alaska Cargo Transport, Inc. v. Alaska R.R., Corp.*, 5 F.3d. 378, 383 (9th Cir. 1993) (stating the district court would have abused its discretion in staying discovery if the discovery was relevant to whether or not the court had subject matter jurisdiction); *Jarvis v. Regan,* 833 F.2d 149, 155 (9th Cir. 1987) (holding district court did not abuse its discretion in denying discovery where complaint did not raise factual issues requiring discovery to resolve); *Kamm v. Cal City Dev. Co.,* 509 F.2d 205, 210 (9th Cir. 1975) (holding that, in some case, propriety of a class action cannot be determined without discovery, and to deny discovery in such cases is an abuse of discretion); *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977) (stating that the better and more advisable practice is for the district court to allow litigants an opportunity to present evidence concerning whether a class action is maintainable, and such an opportunity requires "enough discovery to obtain the material").

The purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery. *Rutman Wine Co. v. E & J Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987). The Ninth Circuit has held that discovery at the pleading stage is only appropriate where factual issues are raised by a Rule 12(b) motion, and a pending Rule 12(b) motion to dismiss is sufficient cause for granting a protective order. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir. 2003), *overruled on other grounds, Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc).

Under Federal Rule of Civil Procedure 26(c), the court may limit the scope of disclosures or discovery on certain matters and prevent certain matters from being inquired into upon a showing of good cause or where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*. The district court has wide discretion in controlling discovery, and its rulings will not be overturned in the absence of a clear abuse of discretion. *Little v. City of Seattle*, 863 F.2d, 681, 685 (9th Cir. 1988). Staying discovery when a court is convinced that the plaintiff will be unable to state a claim for relief furthers the goal of efficiency for the court and the litigants. *Id.*

It is well-established that a party seeking a stay of discovery carries the heavy burden of making a strong showing why discovery should be denied. *Turner*, 175 F.R.D. at 556 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). A showing that discovery may involve some

1    inconvenience and expense is insufficient to establish good cause for issuance of a protective order.

2    *Id.; Twin City*, 124 F.R.D. at 653.  Rather, a party seeking a protective order must show a particular and

3    specific need for the protective order, and broad or conclusory statements concerning the need for

4    protection are insufficient.  *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D. Cal. 1990).

5            To summarize, the Ninth Circuit has held that a district court may enter a protective order

6    staying discovery when a Rule 12(b) motion to dismiss is pending if the district court "is convinced that

7    the plaintiff will be unable to state a claim for relief."  *Wood v. McEwen,* 644 F.2d at 801.  The Ninth

8    Circuit has also held that under certain circumstances, it is an abuse of discretion to deny discovery

9    while a dispositive motion is pending.  Finally, the Ninth Circuit has held that the purpose of a Rule

10   12(b)(6) motion is to enable a Defendant to challenge the legal sufficiency of a complaint without

11   subjecting itself to discovery.  The court's research has not found a Ninth Circuit case announcing the

12   factors a court should apply in deciding a motion to stay discovery while a dispositive motion is

13   pending.

14           Federal district courts in the Northern and Eastern Districts of California have applied a two-

15   part test when evaluating whether discovery should be stayed.  *See, e.g.*, *Mlenjnecky v. Olympus*

16   *Imaging America, Inc.*, 2011 WL 489743 at *6 (E.D. Cal. Feb. 7, 2011) (collecting cases).  First, the

17   pending motion must be potentially-dispositive of the entire case or at least dispositive of the issue on

18   which discovery is sought.  Second, the court must determine whether the pending potentially

19   dispositive motion can be decided without additional discovery.  In applying this two-factor test, the

20   court deciding the motion to stay must take a "preliminary peek" at the merits of the pending

21   dispositive motion to assess whether a stay is warranted.  If the party moving to stay satisfies both

22   prongs, a protective order may issue; otherwise, discovery should proceed.  *Id.*

23           Other courts in the Ninth Circuit have applied a more lenient standard in determining whether a

24   motion to stay should be granted pending a resolution of a potentially dispositive motion.  *See*, *e.g.,*

25   *GTE Wireless, Inc. v. Qualcom, Inc.,* 192 F.R.D. 284, 286 (S.D. Cal. 2000) (stating the court should

26   "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there

27   appears to be an *immediate and clear possibility* that it will be granted."  *Id*. (citing *Feldman v. Flood*,

28   176 F.R.D. 651, 652 (M.D. Fla. 1997) (emphasis in original).

1    In still a third approach, a judge in the Central District of California has held the court should

2    evaluate a request for a stay applying several factors on a case-by-case basis.  *See Skellercup*, 163

3    F.R.D. at 601.  In *Skellercup,* the court adopted the approach taken in *Hachette Distributing v. Hudson*

4    *County News Co.,* 136 F.R.D. 356, 358 (E.D.N.Y. 1991).  *Skellercup* and *Hachette* recognize that

5    discovery should be stayed while a dispositive motion is pending "only when there are no factual issues

6    in need of further immediate exploration, and the issues before the Court are purely questions of law

7    that are potentially dispositive."  *Hachette*, 136 F.R.D. at 356.  Additionally, a case-by-case analysis is

8    required because the inquiry is necessarily fact-specific and depends on the particular circumstances

9    and posture of each case.  *Id.*  These decisions suggest that the court should consider the following non-

10   exhaustive factors: the type of pending dispositive motion and whether it is a challenge as a matter of

11   law or to the sufficiency of the complaint allegations; the nature and complexity of the action; whether

12   counterclaims and/or cross-claims have been asserted; whether some or all of the defendants join in the

13   request for a stay; the posture or stage of the litigation; the expected extent of discovery in light of the

14   number of parties and complexity of the issues in the case; and any other relevant circumstances.  *Id*.

15   In evaluating the propriety of an order staying or limiting discovery while a dispositive motion

16   is pending, this court considers the goal of Rule 1 of the Federal Rules of Civil Procedure which directs

17   that the Rules shall "be construed and administered to secure the just, speedy, and inexpensive

18   determination of every action."  *Id.*  Discovery is expensive.  This court is persuaded that the standard

19   enunciated by Judges Reed and Hunt in *Twin City* and *Turner* should apply in evaluating whether a stay

20   of discovery is appropriate while a dispositive motion is pending.  A stay of all discovery should only

21   be ordered if the court is "convinced" that a plaintiff will be unable to state a claim for relief.  However,

22   as the court in *Mlenjnecky* recognized, taking a "preliminary peek" and evaluating a pending dispositive

23   motion puts a magistrate judge in an awkward position.  2011 WL 489743 at *6.  The district judge will

24   decide the dispositive motion and may have a different view of the merits of the underlying motion.

25   Thus, this court's "preliminary peek" at the merits of the underlying motion is not intended to prejudge

26   its outcome.  Rather, this court's role is to evaluate the propriety of an order staying or limiting

27   discovery with the goal of accomplishing the objectives of Rule 1.  With Rule 1 as its prime directive,

28   this court must decide whether it is more just to speed the parties along in discovery and other

1    proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery

2    and other proceedings to accomplish the inexpensive determination of the case.

3         The explosion of Rule 12(b)(6) motions in the wake of *Bell Atlantic Corp v. Twombly*, 550 U.S.

4    544 (2007), and *Ashcroft v. Iqbal*, 129 S.C. 1937 (2009), has made speedy determinations of cases

5    increasingly more difficult.  Prohibiting or delaying all discovery will often cause unwarranted delay,

6    especially if a pending dispositive motion challenges fewer than all of Plaintiff's claims.  The fact that a

7    non-frivolous motion is pending is simply not enough to warrant a blanket stay of all discovery.  With

8    these principles in mind, the court will take a "preliminary peek" at Defendant's pending Motion to

9    Dismiss.

10        **II.     Defendant's Motion to Dismiss.**

11        Defendant contends that the court lacks subject matter jurisdiction, and that the Complaint fails

12   to state a claim.  The Tribes maintain they have sovereign immunity from suit, including FCA claims,

13   and that Indian tribes, like states, are sovereigns and not "persons" within the meaning of the Act. The

14   Motion cites the Supreme Court's decision in *Stevens* and the Eastern District of Wisconsin's decision

15   in *Menominee Tribal Enterprises,* in support of the Tribes' arguments.  *Vermont Agency of Natural*

16   *Resources v. United States ex rel. Stevens*, 529 U.S. 765, 780-81 (2000); *United States v. Menominee*

17   *Tribal Enterprises,* 601 F.Supp. 2d 1061 (E.D. Wis. 2009).  Principles of comity and federalism require

18   Congress to explicitly abrogate immunity in order to sue a sovereign.  Accordingly, the Tribes' status as

19   a sovereign necessarily excludes them from the Act's definition of "person."  Second, the Tribes are

20   immune from claims brought under the FCA because they may not be sued except where: (a) they have

21   waived sovereign immunity and consented to suits; or (b) Congress has expressly stripped them of

22   sovereign immunity. The Tribes have not waived sovereign immunity by consenting, and Congress has

23   not expressly waived the Tribes' sovereign immunity in FCA suits.  Thus, the court lacks subject matter

24   jurisdiction, and the Complaint should be dismissed.

25        Relying on the Ninth Circuit's decision in *Yakima* and the Eighth Circuit's decision in *Red*

26   *Lake*, Plaintiffs/Relators respond that although the Tribes are sovereigns, such sovereignty does not

27   prevent the federal government from exercising its own superior sovereign powers.  *United States v.*

28   *Red Lake Band of Chippewa Indians,* 827 F.2d 380, 382 (8th Cir. 1987); *United States v. Yakima Tribal*

1    *Court,* 806 F.2d 853, 861 (9th Cir. 1986), *cert. denied,* 481 U.S. 1069 (1987).  Because the United

2    States is the superior sovereign, the Tribes' sovereignty must yield.  Plaintiffs/Relators also argue that

3    the *Menominee* court simply reached the wrong conclusion, and even if the court was correct, the

4    opinion is distinguishable from this case.

5            No Court of Appeals has determined whether tribes are "persons" under the FCA or whether

6    sovereign immunity bars FCA suits against a tribe.  The court's research uncovered only one published

7    decision on point from the Eastern District of Wisconsin, the *Menominee* decision cited by the Tribes.

8    601 F.Supp. 2d 1061.  There, the court considered the Supreme Court's opinions in *Stevens,* 529 U.S. at

9    780-81, and *United States ex rel. Chandler v. Cook County, Illinois*, 538 U.S. 119, 132 (2003).  In

10   *Chandler,* the Supreme Court determined that municipalities and counties were "persons" under the

11   FCA.  *Id.* at 126 (considering that when the FCA was enacted, corporations were "artificial persons,"

12   and as a result, municipal corporations and counties should be considered persons under the Act).

13           In *Stevens,* the Supreme Court held that states are not "persons" for purposes of the FCA, but

14   rather, sovereigns which are immune from suit.  529 U.S. at 780.  The Supreme Court cited prior cases

15   holding that states are sovereigns, and there is a presumption that "person," as defined, does not include

16   the sovereign.  Finding the state could not be sued, the *Stevens* Court reasoned that Congress has never

17   expanded the definition of "person" under the FCA by amendment.  In an another section of the Act,

18   Congress defined "person" to include states, and the absence of that definition in the section permitting

19   qui tam suits evidences Congress' intention that states not be included as "persons."  The Court

20   recognized the general principle that courts should hesitate to apply punitive provisions to

21   governmental entities, and an FCA claim contains punitive characteristics.  Finally, the Court observed

22   that a "sister scheme" of the FCA contained a definition of "persons" that excluded states, so it would

23   be illogical for Congress to exclude states in one statute and include them in another.  601 F.Supp 2d at

24   1067-68.

25           In *Menominee,* the United States brought an action against Menominee Tribal Enterprises

26   ("MTE"), the principal business arm of the Menominee Tribe of Wisconsin, and two of its employees,

27   claiming the defendants submitted invoices contained false information, in violation of the FCA.  The

28   court dismissed the claims against MTE, holding that it was not a "person" as defined by the FCA.  The

1    court reasoned that Indian tribes cannot be sued in the same fashion as counties or cities, and are

2    therefore more like states.  *Id.* at 1069 (noting difference in outcomes in *Stevens* and *Chandler*

3    motivated chiefly by states' sovereign immunity).  Thus, the court applied the rationale of *Stevens* and

4    held that the FCA does not include the Tribes in its definition of "person."

5          Additionally, before a sovereign can be sued, there must be an "affirmative indication" of

6    Congressional intent to abrogate immunity.  *Santa Clara Pueblo v. Martinez,* 436 U.S 49, 56-58 (1978)

7    ("Congress has plenary authority to limit, modify or eliminate the powers of local self-government

8    which the tribes otherwise possess. . . .[W]ithout congressional authorization, the Indian nations are

9    exempt from suit").  In *Martinez,* the Court found that because the Indian Civil Rights Act did not

10   contain an unequivocal expression of legislative intent waiving tribes' sovereign immunity, suits

11   against the tribe were barred.  *Id.* at 59.  Likewise, the FCA and its legislative history do not contain

12   affirmative evidence that Congress intended to allow tribes to be sued.  Moreover, Congress has

13   abrogated tribal sovereign immunity in the past, and the FCA's silence on the matter supports the

14   Tribes' position that they are immune from suit.  *See, e.g.,* 25 U.S.C. §§ 450f(c)(3) (mandatory liability

15   insurance) & 2710(d)(7)(A)(ii) (gaming activities).

16         The cases cited by Plaintiffs/Relators in opposition to the Motion to Dismiss do not compel a

17   different result than the one reached in *Menominee*.  In *Yakima*, the Ninth Circuit found the tribe's

18   sovereign immunity did not bar the federal government's suit to enjoin enforcement of a tribal court

19   injunction prohibiting federal officers from undertaking official tasks on the reservation.  806 F.2d at

20   861 (federal officers seeking to relocate irrigation canal on reservation).  Similarly, in *White Mountain*,

21   the Ninth Circuit found that the tribe's sovereign immunity did not prevent federal officials from

22   performing their official duties on Indian land.  784 F.2d at 919-20 (United States obliged to present

23   tribe's water rights claim in state court, and tribe cannot thwart those efforts).  Finally, in *Red Lake,* the

24   Eighth Circuit held that tribal sovereign immunity did not bar a government suit in federal court to

25   recover tribal court records that had been removed from the tribal court and stored in tribal archives.

26   827 F.2d at 384.  These cases stand for the proposition that tribes retain their historical sovereignty to

27   the extent that it is not inconsistent with the overriding interests of the federal government.

28   */ / /*

1    Finally, courts have long interpreted ambiguities within a statute to protect American Indian

2    rights. *See, e.g., United States v. Nice,* 241 U.S. 591, 599 (1916) ("According to a familiar rule,

3    legislation affecting the Indians is to be construed in their interest, and a purpose to make a radical

4    departure is not lightly to be inferred"); *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143-44

5    (1980) ("Ambiguities in federal law have been construed generously in order to comport with . . .

6    traditional notions of sovereignty and with the federal policy of encouraging tribal independence").

7    This court is persuaded by the rationale of the district judge in *Menominee*. Indian tribes are

8    sovereigns. There is a longstanding interpretive presumption that "person," as defined in a statute, does

9    not include the sovereign. *Stevens,* 529 U.S. at 780. Congress did not expressly abrogate tribal

10   sovereign immunity under the FCA. Qui tam actions like this one are actions brought by private

11   persons, as "private attorney generals," in the name of the United States. *Stalley v. Methodist*

12   *Healthcare*, 517 F.3d 911, 917 (6th Cir 2008); *United States ex rel. Walker v. R&F Properties of Lack*

13   *County, Inc*., 433 F.3d 1349, 1359 (11th Cir 2005). If the United States may not sue an Indian tribe

14   under the FCA because tribes enjoy sovereign immunity, private parties suing in the name of the United

15   States may not either. The Plaintiffs/Relators have not overcome the presumption that "person," as

16   defined in the FCA, does not include a sovereign by showing clear statutory intent to the contrary. This

17   court concludes that the Defendant is not a person for purposes of the FCA, and the Motion to Dismiss

18   should be granted.

19   Defendant's Motion to Dismiss raises the court's subject matter jurisdiction, and it is potentially

20   dispositive of the entire case. Plaintiffs/Relators do not claim they need any discovery to oppose the

21   Motion. The Motion raises no factual issues and will be decided purely on issues of law. This case is

22   currently at the pleading stage, and the Ninth Circuit has held that the purpose of Rule 12(b) is to enable

23   a defendant to challenge the legal sufficiency of a complaint without subjecting itself to discovery. For

24   all of these reasons, the court concludes that a stay of discovery while the motion to dismiss is pending

25   will best accomplish the objectives of Rule 1–to secure the just, speedy, and inexpensive determination

26   of this action.

27   / / /

28   / / /

9

Having reviewed and considered the matter,

**IT IS ORDERED:**

1.     The parties' Stipulated Discovery Plan and Scheduling Order (Dkt. #28) is NOT APPROVED.

2.     Discovery is STAYED pending decision of the Motion to Dismiss (Dkt. #15).

3.     In the event the Motion to Dismiss is denied by the district judge, the parties shall submit a stipulated discovery plan and scheduling order in compliance with LR 26 within 14 days of her decision.

Dated this 14th day of June, 2012.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE